**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM F. RIX, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 06 C 3148 |
| | ) | |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| UNITED PARCEL SERVICE INC., | ) | Magistrate Judge Denlow |
| | ) | |
| Defendant. | ) | |

**AGEED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CERTIFICATION OF RULE 23 SETTLEMENT CLASS,
AND NOTICE OF PROPOSED SETTLEMENT TO CLASS MEMBERS**

Plaintiffs, by their undersigned attorneys, and in agreement with Defendant, file their Agreed Motion for Preliminary Approval of Settlement, Certification of Rule 23 Settlement Class, and Notice of Proposed Settlement to Class Members pursuant to Fed. R. Civ. P. 23(e), and in support thereof state as follows:

**I.     INTRODUCTION**

This case involves state and federal statutory claims of unpaid overtime by the Plant Engineering ("P.E.") mechanics employed by Defendant United Parcel Service Inc. ("UPS") at UPS's Chicago Area Consolidated Hub ("CACH").  The P.E. Mechanics claim they were not paid for hours actually worked during pre-shift time and post-shift time for passing through security and for donning.  As described herein, the P.E. Mechanics originally brought suit under the Fair Labor Standards Act and the Illinois Wage Payment and Collection Act.  All allegations of liability were denied by UPS and the case has been vigorously defended.  After considerable time, effort, and expense incurred by the parties and their attorneys, the parties have agreed to settle all claims made the basis of this lawsuit.

In accordance with Fed. R. Civ. P. 23(a) and (b), the parties seek certification of a class for purposes of effectuating this settlement, and pursuant to Rule 23(e), the parties seek Court approval of the settlement as described below, together with proposed notice to the Plaintiff class of the terms thereof.

## II. PROCEDURAL /FACTUAL BACKGROUND

The Plaintiffs are all P.E. Mechanics employed at UPS's Chicago Area Consolidated Hub ("CACH") between April 28, 2001 and December 1, 2008 (hereinafter, collectively, as "P.E. Mechanics" "the Class" or "Class Members").  On or about April 28, 2006, Plaintiffs filed a collective and class action complaint seeking damages, injunctive relief, and an accounting for violations of the overtime provisions of the Fair Labor Standards Act ("FLSA") and the Illinois Wage Payment and Collection Act.  The case was filed as a collective action under the applicable provisions of the FLSA and as a class action under the Illinois statutes by class representatives William F. Rix, Cozenn Johnson, Jr., Michael A. Volanti, Fred Ford, Alan Powell, and David W. Davies.  The substance of the alleged statutory violations arise from the P.E. Mechanics' contention that they were not paid for time worked pre-shift, and post-shift for passing through security and donning.

### A. Claims

Plaintiffs' FLSA claim was brought by and on behalf of all P.E. Mechanics who in accordance with the FLSA executed consent forms "opting-in" to the collective action which were filed with the complaint herein.  This Court designated this case to facilitate notice under § 216(b) of the FLSA on November 22, 2006.  (Dkt. No. 36.)

The lawsuit was also filed under the Illinois Wage Payment and Collection Act on behalf of all P.E. Mechanics employed at the CACH Facility during the requisite time period.  The

2

Defendant has agreed to produce an updated roster of P.E. Mechanics employed at UPS's medical facilities during the requisite time period to determine the correct number of class members, but has represented that the number of class members affected by this settlement is approximately 150 individuals.

  **B.**  **Defenses**

In response to the Plaintiffs' claims, UPS first filed a motion to dismiss that was denied, and then filed its Answer, alleging among other things that the case should not proceed as a class or collective action, that the P.E. Mechanics were not entitled to any unpaid overtime pay, that the P.E. Mechanics could not state any claims against UPS upon which relief could be granted, and that the Plaintiffs' claims were barred by various affirmative defenses.

In addition, Defendant vigorously contested Plaintiffs' claims that they had in fact worked overtime hours during pre-shift, and post-shift. It is anticipated that the Defendant would have elicited testimony from numerous witnesses contradicting the P.E. Mechanics' evidence in that regard, including ample video evidence of Plaintiffs' pre-shift and post-shift activities. It is anticipated that these would have been vigorously contested fact issues at the trial.

  **C.**  **Class Certification**

This Court designated this case to facilitate notice under § 216(b) of the FLSA on November 22, 2006. (Dkt. No. 36.) The Parties agree that a class should be certified for settlement consisting of all P.E. Mechanics employed at UPS's Chicago Area Consolidated Hub ("CACH") between April 28, 2001 and December 1, 2008. The Parties agree that the requisites of Rule 23 are satisfied with respect to the members of the class described above.

Rule 23 of the Federal Rules of Civil Procedure sets forth the well-known requirements for class certification: a class so numerous that joinder would be impractical; issues of fact or law common to the class; representatives must be typical; and the named plaintiffs and their counsel must be adequate to represent the class. In this case, this class encompasses more than 100 P.E. Mechanics. The relatively small size of the damages at stake for any particular class member makes individual suits economically impractical. Here, the facts of each claim are common and simple – Plaintiffs consistently entered and exited through the same security shack, entered and exited the CACH Facility and donned UPS mandated uniforms during pre-shift and post-shift time. Plaintiffs contend they performed uncompensated work on-the-clock but outside-of-shifts. "The fact that individual plaintiffs may have more or less unpaid work does not erase the commonality of the issue…" *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). As already established for purposes of notice under § 216(b), Defendant's timekeeping and security policies constitute a common decision, policy or plan. The circumstances in this case easily satisfy the typicality requirement of Rule 23(a)(3). The named Plaintiffs in this case are pursuing claims identical to those of the class.

The adequacy of Plaintiffs' counsel is uncontested. Adam J. Betzen and Christopher Mammel of Childress Duffy Goldblatt are experienced in federal court representing plaintiffs in collective and class actions. Adjudicating the state law claims of the employees subject to Defendant's pre-shift and post-shift work policies concurrently with their FLSA claims is the only way to proceed consistent with the purpose and intent of Rule 23. While it would obviously be inefficient for 150 P.E. Mechanics to bring separate claims for unpaid wages, it would be similarly inefficient to adjudicate the Plaintiffs' claims under federal law in this case without certifying a Rule 23 class.

4

**D.     Settlement Negotiations**

These parties entered into private mediation to attempt settlement on April 16, 2008. Furthermore, the parties engaged in informal settlement discussions throughout the proceeding. The parties continued to negotiate and ultimately on or about August 26, 2008 reached in principle the proposed settlement described herein.

### III.    TERMS OF SETTLEMENT AND COMPROMISE OF CLAIMS

The terms of the settlement are described fully in the Stipulation of Settlement attached hereto as Exhibit 1. Summarizing the Stipulation of Settlement, UPS shall pay $300,000 (the "settlement fund") to settle all claims against UPS.

### IV.    STANDARD FOR PRELIMINARY APPROVAL

**A.     Settlement of a Class Action**

Rule 23(e) of the Federal Rules of Civil Procedure provides:

> "(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs."

The Seventh Circuit has recognized that the essence of a settlement is compromise and that one of the benefits obtained from it is avoidance of the need for Court resolution of disputed issues. *In re General Motors Corporation Engine Interchange Litigation,* 594 F.2d 1106 at 1132, n. 44 (7th Cir. 1979); *Patterson v. Stovall,* 528 F. 2d 108, 112, 114 (7th Cir. 1976); *McDonald v. Chicago Milwaukee Corporation,* 565 F.2d 416 (7th Cir. 1977). Before it can approve a settlement agreement involving a class action, however, the Court must be satisfied that the settlement is fair, reasonable, and adequate. *In re General Motors,* 594 F.2d at 1122. The proponents of the settlement bear the burden of persuasion on the issue of fairness. *In re*

*General Motors,* at 1126, n. 30; <u>Manual For Complex Litigation</u>, Sec. 30.41 at 238 (1995 ed.) (Wright & Miller) (hereinafter "Manual").

Among the factors which the Court should consider in judging the fairness of a settlement proposal are the following:

    a.    The strength of the merits of the Plaintiffs' case balanced against the amount offered in settlement;

    b.    The Defendant's ability to pay;

    c.    The complexity, length, and expense of further litigation;

    d.    The amount of opposition to the settlement.

<u>Manual</u> at 238-40. Additional factors recognized by the Courts and commentators include the following:

    a.    Presence of collusion in reaching a settlement;

    b.    The reaction of members of the class to the settlement;

    c.    The opinion of the competent counsel;

    d.    The stage in the proceedings and the amount of discovery completed.

*Id*.; 3<u>B. Moore's Federal Practice,</u> section 23.80(4) at 23-521 (2nd ed. 1978). The most important of the factors referenced above is the strength of the merits of the Plaintiffs' case as compared to what is offered in settlement. *In re General Motors,* at 1132, n. 44; *see generally,* <u>Manual</u> at 238-40.

The decision to accept or reject the settlement proposal is one within the discretion of the district court. *In re Clark Oil & Refining Corporation Antitrust Litigation,* 422 F. Supp. 503 (E.D. Wis. 1977); <u>Manual</u> at 240. If the Court finds that the settlement is fair, it may accept it over the objections of some class members and/or the named class representative. *In re General Motors,* at 1128, 1134, n. 34. The Court cannot, however, modify the terms of a settlement

6

proposal; it can only accept or reject the proposal as presented to it. *In re General Motors,* at 1125, n. 24.

In the Manual it is recommended that the Court follow a 2-step procedure, which the 7th Circuit has endorsed. As set forth in *In re General Motors* the procedure provides as follows:

> "The first step involves a preliminary determination as to whether notice of the proposed settlement should be given to members of the class and a hearing scheduled at which evidence in support of and in opposition of the proposed settlement will be received. Unless the judge is preliminarily satisfied that the proposed settlement is within the range of possible approval, there is no point in proceeding with notice and a hearing…."
>
> "Such a preliminary hearing is not, of course, a definitive proceeding on the fairness of the proposed settlement….it is simply a determination that there is, in effect, 'probable cause' to submit the proposal to members of the class and to hold a full scale hearing on its fairness at which all interested parties will have an opportunity to be heard after which a formal finding of fairness will be made."

*See generally* Manual at 236-38. Assuming that a finding of probable cause is made and notices given to members of the class, the Court must then conduct a hearing and make a record sufficient for a reviewing court to confirm that the trial court made appropriate inquiry to determine that the settlement was fair, reasonable, and adequate. *Id.* at 238.

    **B.**    **The settlement in this case is fair, reasonable, and adequate**

        **a.)**    **Strength of Plaintiffs' case and the amount of settlement**

Class counsel have concluded after substantial investigation and discovery of the facts, after carefully considering the claims and defenses being asserted herein, the substantial costs associated with proceeding, and after extensive settlement negotiations that included a mediation, that it is in the best interest of the Plaintiffs, including specifically, the Class to enter into this Stipulation of Settlement in order to avoid the uncertainties of complex litigation, to assure a benefit to the Class Members, and to minimize the need for significant additional

7

litigation. Class Counsel believe that, in consideration of all the circumstances and after considerable arm's-length negotiations, the proposed settlement embodied in this Stipulation is fair, reasonable, and adequate and confers substantial benefits on, and is in the best interests of the Class and each of the Class Members.

Liability in this case is a closely contested issue. The allegations of unpaid overtime have been vigorously defended by the Defendant. Conversely, if the Plaintiffs prevail in all their claims, the amount of recovery, including liquidated damages, would be substantial.

The essence of the Plaintiffs' claims is that they were not paid for time worked prior to the scheduled start of their shift, and after the scheduled conclusion of their shift. These elements have been factually attacked by the Defendant. As mentioned above, it is anticipated that the Defendant will elicit testimony at the trial in direct contradiction to the P.E. Mechanics' evidence that they did not in fact work during the time alleged, including video evidence. In its defense, it is anticipated that the Defendant will rely upon video evidence contradicting P.E. Mechanics' claims.

### b.) Pre-shift and Post-shift

The P.E. Mechanics are required to pass through security and don UPS mandated uniforms prior to each shift. UPS does not pay for this time. Plaintiffs contend that the security checks which are required both when P.E. Mechanics enter and leave the facility are to prevent thefts from the CACH facility and are for the benefit of UPS. Plaintiffs further contend that UPS mandated uniforms are personal safety equipment and that the donning time is compensable. (Plaintiffs customarily doff their uniforms during a paid break before going off the clock.) Defendant obtained the benefit of these services without having to pay for them.

In its defense, UPS contends that none of these activities are a principal work activity, but are, instead, preliminary activities that do not constitute hours worked under the applicable laws. *See e.g.* 29 U.S.C. § 254(a). UPS has also sought to minimize the time spent by the P.E. Mechanics passing through security. UPS contends that a large portion of the security checks were thirty seconds or less, which it characterizes as *de minimis*. In addition, UPS claims that the UPS uniforms were not safety equipment and fell within an exception found in 29 U.S.C. § 203(o). UPS further contends that the overtime sought by plaintiffs is subject to an offset, under 29 U.S.C. § 207(h)(2), of the extensive premium pay received by the mechanics.

### C. The Defendant's ability to pay

This is not an issue in this case as the Defendant has sufficient resources to satisfy a judgment recovered in this case.

### D. The complexity, length, and expense of further litigation

This case has been pending since April of 2006. The Parties have conducted a private mediation on April 16, 2008 to attempt to reach a settlement. Assuming the case proceeded as an FLSA collective action and class action under the Illinois Wage Payment and Collection Act, it is estimated that the trial would have lasted at least 10 – 15 trial days. If the class were decertified or if it were determined that the FLSA actions would proceed individually, then the case would have conservatively taken at least 40 days to try, since more than 80 Plaintiffs have individually executed consents in this case.

Following the completion of a jury trial, it is anticipated that the losing side would have appealed the decision which necessarily would have resulted in further significant delay. In light of the foregoing, if the case were not settled at this point, it is likely that the final decision in this matter would have been delayed another 2 – 3 years, inclusive of all appeals.

**E.     The amount of opposition to the settlement**

Plaintiffs' attorneys have conferred with the Plaintiffs' class representatives regarding the settlement. The class representatives have not voiced any opposition to it. Further, several class members have been conferred with and they have approved the proposed settlement. Plaintiffs' counsel reasonably anticipates that there will not be any opposition to the terms of the settlement, nor that any significant number of class members will opt out of the settlement class.

**F.     Presence of collusion in reaching a settlement**

There has been no collusion between the parties in reaching settlement in this case. The attorneys for all parties have zealously represented their clients in this case both in terms of prosecuting their claims and defenses and in the negotiations at issue. At last twenty depositions have been taken in this case, including six individual Plaintiffs who have been deposed. The settlement amounts are supported by the electronic data offered in this dispute, including payroll data and time records from security badge swipes, and recognize the legal and factual weakness of either Party's positions.

**G.     Reaction of members of the class to the settlement**

All reaction thus far from members of the class has been positive, in light of the strengths and weaknesses of the legal positions in the case. Plaintiffs' counsel has not received any negative feedback to the settlement. The representatives of the Plaintiff class recognize the strengths and weaknesses of their legal position and support the settlement.

**H.     The opinion of competent counsel**

Counsel for the Parties concur that the settlement is fair to their respective clients based upon the claims, the law, the anticipated evidence and the other factors mentioned herein. Class counsel recommend the settlement for approval

I. **Stage of proceeding and the amount of discovery completed**

Substantial discovery has been completed in this case, much of which was targeted at the most contentious and relevant disputes. At least twenty depositions have been taken in this case. In addition, Plaintiffs counsel has reviewed extensive electronic data, including video evidence, payroll data and time records from security badge swipes, to assess the average amount of time needed to complete pre-shift and post-shift activities. The stages of the proceedings have been described above. In this stage of the proceeding, it is clear that a final decision or judgment would not be rendered in this case for another 2 – 3 years absent settlement.

## Conclusion

Based upon the above factors, the settlement agreed to by the Parties is fair, reasonable, and adequate. Accordingly, the Parties jointly request that the Court:

a) grant this Motion for preliminary approval of the proposed settlement;

b) enter the proposed order granting preliminary approval attached hereto as Exhibit 2; and

c) grant all further relief deemed just and proper.

Respectfully submitted,

**s/Adam J. Betzen**

One of Plaintiffs' Attorneys

Christopher N. Mammel (6231492)
Adam J. Betzen (6282523)
Childress Duffy Goldblatt, Ltd.
Attorneys for Plaintiffs
515 N. State Street, Ste. 2200
Chicago, Illinois 60610
312-494-0200 (tel)
312-494-0202 (fax)

QB\7003745.2

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument was served upon counsel of record pursuant to ECF as to Filing Users, on this the 9th day of December, 2008.

      **s/Adam J. Betzen**